UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KELVIN COLEMAN, et al.,          )
                                 )
        Plaintiffs,              )
                                 )
    vs.                          )          Case No. 4:06CV01376 ERW
                                 )
CITY OF PAGEDALE, et al.,        )
                                 )
        Defendants.              )

**MEMORANDUM AND ORDER**

This matter comes before the Court on the City of Pagedale, Hugh Ross, and Herschell Turner's Motion for Summary Judgment [doc. #44] and their Motion to Strike Plaintiffs' Sur-Replies [doc. #60].

**I.     PROCEDURAL BACKGROUND**

Kelvin Coleman filed this action individually and as plaintiff ad litem for Kelvin Dobbs, and Pamela Dobbs-Coleman and D.B. (collectively, "Plaintiffs") later joined this action.[1] In their Amended Complaint, Plaintiffs allege that the City of Pagedale, the Pagedale Police Department, Hugh Ross, and Herschell Turner violated Plaintiff Kelvin Dobbs' ("Dobbs") constitutional rights during his confinement at the Pagedale Jail, and they also seek to recover under the Missouri state law theories of wrongful death and lost chance of recovery.

Plaintiffs originally named the Pagedale Police Department as a defendant in this suit, however, Plaintiffs' claims against the Pagedale Police Department were dismissed in an Order dated May 15, 2007 as the Pagedale Police Department is not a legal entity and not a suitable

---

[1] Kelvin Coleman and Pamela Dobbs-Coleman are the biological parents of Kelvin Dobbs. D.B. is a minor, and the biological son of Kelvin Dobbs.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

defendant. Plaintiffs' claims against the City of Pagedale, Hugh Ross, and Herschell Turner (collectively, "Defendants") continued. Defendants have now filed the pending Motion for Summary Judgment.

## II.    BACKGROUND FACTS[2]

Pageville police officers were called to Carolyn Burgess' home at least three times between March 2004 and October 28, 2005. The first time the police came was in March or April of 2004. Dobbs had been drinking and depressed the night before, and had taken Aleve and drank fingernail polish. Carolyn Burgess called for an ambulance the next morning when Dobbs began vomiting blood. Defendant Turner along with two other officers arrived before the ambulance and Carolyn Burgess told them what he had ingested and that he had tried to hurt himself.[3]

The police were called again on or around the night of June 28, 2005. Dobbs had been drinking and Carolyn Burgess testified in her deposition that he began acting crazy and stripped off his clothes, kicked out a window, and was trying to fight with her. Carolyn Burgess called the police and Defendant Turner and Defendant Ross responded to her call. Carolyn Burgess asked them to take Dobbs to the jail so he could cool off. While she was talking to the police on the porch, Dobbs was outside, wearing just his underwear and tennis shoes. In her deposition, Carolyn Burgess stated that Dobbs was running into cars and standing in the middle of the street saying "[h]it me, hit me." He also said that he wanted to die and that he was tired of living. In his deposition, Defendant Ross states that Dobbs "yelled and screamed" and that his hand was cut

_____

[2] The Court's recitation of the facts is taken from Defendants' Motion for Summary Judgment, Plaintiffs' Response to Defendants' Statement of Material Facts, Plaintiffs' Statement of Material Facts and the Deposition Transcripts.

[3] The two other officers are not defendants in this suit.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

from breaking the window. Defendant Ross testified that he never heard Dobbs make statements about not wanting to live without Carolyn Burgess.

On October 28, 2005, Carolyn Burgess called the police again. Defendants Ross and Turner responded to the call. When they arrived, Dobbs was outside of the house, and made statements to the effect that he couldn't live without her and that he didn't want to go on without her. Dobbs went into the street and was telling people to hit him, saying "[c]ome on, hit me, hit me." The officers would grab Dobbs and restrain him when he would try to run towards Carolyn Burgess, but she stated that they did not restrain him when he was in the street, and that instead they were laughing. Dobbs did not calm down and Defendant Ross arrested him at 11:15 p.m. The police report states that Dobbs appeared to be intoxicated at the time of his arrest.

Dobbs was transported to the Pagedale police station by Defendant Turner. The deposition testimony of Defendant Turner and Defendant Ross disputes where Dobbs was when Defendant Ross arrived at the station. Defendant Ross stated that Dobbs had already been placed in a holding cell by Defendant Turner. Conversely, Defendant Turner stated that Dobbs was still in the holding area and that Defendant Ross called EMS to come look at Dobbs' hand. Defendant Turner stated that he turned Dobbs over to Defendant Ross in the holding area and left after EMS finished evaluating Dobbs.

The Policy and Procedure Manual for the Pagedale Police Department contains General Order 9-28. This Order contains the procedures for processing detainees. It provides for an inventory search in which a detainee's property is to be gathered. The order specifically states that "[d]etainees are not authorized to keep hats, shoes, coats, jackets, belts, or more than one shirt or pair of pants." However, when Dobbs was placed in the holding cell he was wearing his street clothes, including hat, belt, shoes and shoelaces. It is disputed as to whether Defendant

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Ross or Defendant Turner should have followed this Order and removed Dobbs' possessions, regardless, his possessions were not removed. The deposition transcripts also dispute which Defendant actually placed Dobbs in the holding cell.

Jainna Brown was a Clerk at the Pagedale Police Department. She was responsible for reviewing the monitors that night, but did not notice that Dobbs was wearing a hat and shoes. Defendant Ross attributed this to the "ungodly amount of work that they do." However, Jainna Brown was the first person to notice that something was wrong in Dobbs' cell, and she sent Defendant Turner to check that cell. Dobbs had used his belt to hang himself. Defendant Turner found him hanging and then called Defendant Ross to come help.

Defendants Ross and Turner got Dobbs out of his hanging position and relieved the pressure on his neck. It is unclear what happened immediately after he was cut down, however, the surveillance video demonstrates that it wasn't until approximately two and a half minutes later that Defendant Ross began performing CPR on Dobbs.[4] Dobbs eventually died from the hanging. Defendants have introduced evidence from Doctor Mary Case that due to the length of time Dobbs was hanging, his brain damage was irreversible. As a result, death was inevitable regardless of whether CPR had been started immediately after he was cut down.

## III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[4] There is some contradiction over what Defendant Turner was doing during this time. Defendant Ross testified he both called for help and performed CPR. He also stated that he later confronted Defendant Turner for not helping him perform CPR or call for help, and that Defendant Turner's response was that "[i]t wasn't my prisoner." In his deposition, Defendant Turner claimed that he was the one who called for help.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (*quoting* Fed. R. Civ. P. 1).  "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor."  *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue.  *Anderson*, 477 U.S. at 256-57.  When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV. DISCUSSION

## A. MOTION TO STRIKE

On January 2, 2008, Plaintiffs requested leave to file a sur-reply. The stated reason for their request was "to demonstrate to this Court why Defendants [sic] complaints [regarding Plaintiffs' Exhibits 1 through 5]are nothing more than 'form over substance' and why their Exhibits are competent." The Court granted Plaintiffs' request, and Plaintiffs filed both a 31-page "Sur-Reply to Defendants' 'Reply to Plaintiffs' 'Response to Defendants' Statement of Material Facts' and to Plaintiffs' 'Statement of Material Facts'" along with a 15-page document labeled "Plaintiffs' Memo in Support of Their Sur-Reply to Defendants' Motion for Summary Judgment." Defendants promptly filed a Motion to Strike Plaintiffs' Sur-Replies, arguing that the Sur-Reply goes far beyond the scope of leave requested by the Plaintiffs and that Plaintiffs never received

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

permission to file the accompanying Memo in Support. Plaintiffs reply that these 46 pages are directed towards Defendants' criticisms of the Exhibits and that their memorandum is in keeping with the Rules.[5]

A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). As is evident from the language of this rule, motions to strike may only be directed toward "material contained in pleadings." *Williams ex rel. McIntosh v. City of Beverly Hills, Mo.*, 2007 WL 2792490, at *2 (E.D. Mo. September 24, 2007). The Federal Rules define pleadings as "a complaint and an answer; a reply to a counterclaim . . . ; an answer to a cross claim . . . ; a third-party complaint . . . ; and a third party answer." Fed. R. Civ. P. 7(a). Accordingly, "[m]otions, briefs, memoranda, objections or affidavits may not be" the subject of a motion to strike. *Williams ex rel. McIntosh*, 2007 WL 2792490, at *2; 2 James W. Moore, et al., *Moore's Federal Practice* § 12.37[2] (3rd ed. 2007). Plaintiffs' Sur-Reply and Memorandum are not pleadings and may not be attacked in this manner. The Court will deny Defendants' Motion to Strike Plaintiffs' Sur-Replies.

## B.    PLAINTIFFS' CLAIMS UNDER FEDERAL LAW: 42 U.S.C. § 1983

In Count III of their Amended Complaint, Plaintiffs seek to recover under 42 U.S.C. § 1983 for the violation of Dobbs' constitutional rights. Plaintiffs have alleged deliberate indifference to a known risk of suicide and deliberate indifference to a serious medical need. Additionally, Plaintiffs allege that the City of Pagedale is liable as they failed to properly hire, train and supervise their officers. The Court will review these causes of action individually.

---

[5] Local Rule 7-401 states that a "moving party shall file with each motion a memorandum in support." Plaintiffs' Sur-Reply is not a motion, and a memorandum in support is not necessary. However, the Court declines to penalize Plaintiffs for their confusion over what the Local Rules require.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## Deliberate Indifference to a Known Risk of Suicide

The Supreme Court has held that under the due process clause of the Fourteenth Amendment, a pretrial detainee holds at least the same level of constitutional protection that is enjoyed by prisoners under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). To recover for the violation of a pretrial detainee's right to be protected from the known risk of suicide, Plaintiffs must make two separate showings: "First, the danger to the inmate must be objectively serious, posing a substantial risk of serious harm. Second, the prison official must have a sufficiently culpable state of mind." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000); *Farmer v. Brennan*, 511 U.S. 834, 828 (1994).

Courts consider suicide to be a "serious harm" and as a result the first requirement is satisfied as the alleged deprivation was "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834; *Short v. Smoot*, 436 F.3d 422, 427; *Estate of Novack ex rel. Turbin*, 226 F.3d at 529. Next, the Court must determine whether Defendants possessed "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Specifically, the proper inquiry is whether Defendant Ross and Defendant Turner acted "with 'deliberate indifference.'" *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998). The Eighth Circuit has stated that the deliberate indifference standard "is equivalent to the criminal law standard of recklessness- 'a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007).

Defendant Ross and Defendant Turner deny having knowledge of the risk that Dobbs would commit suicide. They assert that summary judgment is appropriate because without any knowledge that Dobbs was a suicide risk, they had no duty to take reasonable preventative steps, such as removing Dobbs' belt. It is certainly correct that defendants "cannot be charged with

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

inferences that [they] did not actually draw." *Kahle v. Leonard*, 477 F.3d 544, 552 (8th Cir. 2007). However, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 511 U.S. at 842).

As a result, the Court must determine whether the risk that Dobbs would commit suicide was obvious. This was not the first time these officers had responded to a call regarding Dobbs. Defendant Turner had responded to a call in 2004 in which Dobbs was vomiting blood after ingesting Alleve and nail polish. Both Defendant Turner and Defendant Ross responded to the call on June 28, 2005 where Carolyn Burgess testified that Dobbs was running into cars and standing in the middle of the street saying "[h]it me, hit me" and that Dobbs also said that he wanted to die and that he was tired of living. Both Defendant Turner and Defendant Ross also responded to the call on October 28, 2005. When they arrived, Dobbs was outside of the house, and made statements to the effect that he couldn't live without her and that he didn't want to go on without her. Dobbs went into the street and was telling people to hit him, saying "[c]ome on, hit me, hit me." The officers would grab Dobbs and restrain him when he would try to run towards Carolyn Burgess, but she stated that they did not restrain him when he was in the street, and that instead they were laughing.

Whether a defendant had knowledge of a risk may be established "by all the usual ways, including inferences based on the obviousness of the risk." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). In viewing the facts presented in the light most favorable to Plaintiffs, as the non-moving party, and giving Plaintiffs the benefit of all reasonable inferences which may be drawn from their account of the facts, the Court finds that a reasonable jury could find that the risk that Dobbs would commit suicide was obvious, and that Defendant Ross and Defendant Turner therefore had knowledge of the risk.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

As suicide is a serious harm, "prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Estate of Novack ex rel. Turbin*, 226 F.3d at 529. Defendants obviously did not take reasonable preventative steps as they failed to remove Dobbs' belt and shoelaces. There is a genuine dispute of material fact as to whether the risk that Dobbs would commit suicide was obvious. Accordingly, summary judgment is not proper and should be denied on Plaintiffs' claim that Defendants Ross and Turner failed to protect Dobbs from the known risk of suicide.

The Court also finds that Defendant Ross and Defendant Turner are not entitled to qualified immunity. Two inquiries are necessary in determining whether an individual is protected by qualified immunity. *Weaver v. Lincoln County, Nebraska*, 388 F.3d 601, 605 (8th Cir. 2004); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001). The threshold question the Court must ask is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. The next step in the analysis is to ask if "the right was clearly established . . . in light of the specific context of the case." *Id.* As discussed above, the Court finds sufficient evidence that Defendant Ross and Turner may have violated Plaintiffs' rights. Such rights under the Fourteenth and Eighth Amendments, dealing with a pretrial detainee's right to be protected from the known risk of suicide, were clearly established at the time of the alleged incident. *See, e.g. Weaver*, 388 F.3d at 605; *Gregoire*, 236 F.3d at 417; *Estate of Novack ex rel. Turbin*, 226 F.3d at 529. Therefore, Defendants Ross and Turner's motion for summary judgment on grounds of qualified immunity should be denied.

## Deliberate Indifference to a Serious Medical Need

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

To succeed on an Eighth Amendment medical claim, a plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations omitted). Deliberate indifference may be established "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. It is important to note, however, that mere negligence on the part of the prison guards is "insufficient to rise to a constitutional violation." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "An inmate must show '(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Plemmons v. Roberts*, 439 F.3d 818, 825 (8th Cir. 2006) (*quoting Dulany*, 132 F.3d at 1239).

Deliberate indifference to a serious medical need may be manifested "by prison guards in intentionally denying or delaying access to medical care." *Estelle*, at 104-05. "A reasonable officer would know that it is unlawful for officers to delay medical treatment for an inmate with obvious signs of medical distress." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 863 (8th Cir. 2006). However, for a claim of delay in medical treatment to succeed, a plaintiff must introduce evidence to establish that the delay had a detrimental effect. *Bolin v. Rude*, 2005 WL 2994288 at *4 (W.D. Mo. November 7, 2005); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995); *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995). Defendants have introduced evidence that Dobbs' death was already assured, and Plaintiffs have not introduced any contrary evidence. There is no genuine issue of material fact regarding whether the delay in providing CPR had a detrimental effect, and Defendants Ross and Turner cannot be liable for deliberate indifference to a serious medical need resulting from their delay in beginning CPR.

### Liability of the City of Pagedale

Plaintiffs assert that the City of Pagedale is liable for failing to train their officers and jail personnel, and for failing to discipline, instruct, supervise, or otherwise control the conduct of officers, so that it comported with formal policy. "In a section 1983 action, a municipality may only be liable for constitutional violations which result from a policy or custom of the municipality." *Turney v. Waterbury*, 375 F.3d 756, 761-62 (8th Cir. 2004) (*quoting Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000). Allegations of a policy or custom are interpreted to encompass claims that a municipality failed to properly train its employees. *Id.* However, to survive summary judgment, Plaintiff must present sufficient evidence which would enable a jury to return a favorable verdict regarding the existence of a "custom or usage with the force of law." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 796 (1997).

Plaintiffs specifically allege that Defendants Ross and Turner felt free to disregard General Order 9-28, and that Clerk Jainna Brown lacked training. Plaintiffs have not presented sufficient evidence upon which a factfinder could find a custom or policy. *Farmer*, 511 U.S. at 842. The mere fact that in this one instance General Order 9-28 was not followed and Dobbs' possessions were not collected does not support "a policy or custom" of the Order not being followed. *See Grayson v. Ross*, 454 F.3d 802, 811 (8th Cir. 2006). Additionally, while the frequency and attention with which Jainna Brown checked the monitors may have been unacceptable, Plaintiffs have "advanced no evidence or case law that [her] training was deliberately indifferent to [Dobbs'] rights." *Id.* Accordingly, all of Plaintiffs' claims against the City of Pagedale that are based upon 42 U.S.C. § 1983 will be dismissed.

## C. PLAINTIFFS' CLAIMS UNDER STATE LAW: WRONGFUL DEATH & LOST CHANCE OF RECOVERY

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In Count I, Plaintiffs seek to recover for wrongful death pursuant to Mo. Rev. Stat. § 537.080, and in Count II, Plaintiffs seek to recover for lost chance of recovery pursuant to Mo. Rev. Stat. §§ 473.033 and 537.021.1. In Defendants' Motion for Summary Judgment, they ask the Court to grant summary judgment in their favor on all counts, however, in their Memorandum in Support they do not discuss the elements of these claims, and whether Plaintiffs have established "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Rather, Defendants contest these Counts only on the basis of the various immunity arguments they proffer, and these arguments are discussed below.

## Official Immunity

Under this doctrine, public officials are able to avoid liability for ministerial acts that are not performed negligently, and are immune from liability for discretionary acts, as long those acts are not "done in bad faith or with malice." *Davis v. Board of Educ.*, 963 S.W.2d 679, 688 (Mo. Ct. App. 1998); *see also Davis-Bey v. Missouri Dept. of Correction*, 944 S.W.2d 294, 297 (Mo. Ct. App. 1997). The removal of a detainee's property is a ministerial act. "Whether an act is discretionary or ministerial depends on the 'degree of reason and judgment required' to perform the act." *Davis v. Lambert-St. Louis Intern. Airport*, 193 S.W.3d 760 (Mo. banc 2006).

As demonstrated in the deposition testimony, the removal of a detainee's property was required for every individual detained in the holding area or placed in a holding cell. This is clearly ministerial as it is "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (internal citations omitted). The finding that police inventory procedures are

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

ministerial is in keeping with state court decisions on this same topic. *See Jungerman v. City of Raytown*, 925 S.W.2d 202, 206 (Mo. banc 1996); *Harris v. Munoz*, 43 S.W.3d 384, 388-39 (Mo. Ct. App. 2001).

While official immunity protects officials from liability, its application to mere employees is limited. *Davis*, 193 S.W.3d at 763; *Green v. Denison*, 738 S.W.2d 861, 866 (Mo. banc 1987). Official immunity will protect employees only when they "exercis[e] judgment and discretion." *Id.* For example, the official immunity doctrine protects police officers responding to an emergency, but does not apply to police officers responding to a non-emergency. *Id.* As discussed above, the police inventory procedure was ministerial, and not discretionary. As a result, the officers enforcing the procedure were not "exercis[ing] judgment and discretion," and they are not entitled to the protection offered by official immunity. *Id.*

### Public Duty Doctrine

Defendants Ross and Turner assert that the public duty doctrine protects them from liability. This doctrine states that a public employee is not civilly liable for a breach of duty, as long as that duty is owed to the general public and not a particular individual. *Jungerman*, 925 S.W.2d at 205. "The public duty doctrine recognizes that the duties of public officers are normally owed to the general public and that a breach of such duty will not support a cause of action by an individual injured thereby." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986). If the acts of a public employee are covered under this doctrine, the defendant's state of mind becomes irrelevant, regardless if they acted with intent, malice, or gross negligence. *Berger v. City of University City*, 676 S.W.2d 39, 42 (Mo. Ct. App. 1984). This immunity applies to all public employees and "does not require that the individual be a public official." *State ex rel. Howenstein v. Roper*, 155 S.W.3d 747, 752 (Mo. banc 2005) (internal

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

citations omitted). Plaintiff argues that the public duty doctrine does not protect Defendants Turner and Ross as the duty was owed specifically to Dobbs and not the general public. *See Sherill v. Wilson*, 653 S.W.2d 661, 669 (Mo. banc 1983).

The facts before the Court today are similar to *Cooper v. Planthold*, in which a pretrial detainee committed suicide after police officers did not follow department orders and failed to remove his suspenders. 857 S.W.2d 477, 478 (Mo. Ct. App. 1993). In *Cooper*, the court determined that:

> the practice of removing personal belongings has several plausible policy rationales. The order hampers the prisoner from injuring himself and others while in custody. It also assists in keeping a close account on the prisoner's property which avoids needless litigation over allegedly lost property. Thus, the order is multidirected . . .

*Id.* As there was no evidence that "the order was promulgated to personally protect particular individuals," the court found that the public duty doctrine protected defendants. *Id.* However, *Cooper* is readily distinguishable from the action pending before the Court as the pretrial detainee in *Cooper* gave no indication that he was a suicide risk. *Id.* As discussed in more detail above, the Court has already determined that a reasonable jury could find that the risk that Dobbs would commit suicide was obvious.

When a specific risk is obvious, the inquiry is not to a public duty, but rather a duty that is owed particularly to that individual. A duty to a private individual exists "when injury to a particular, identifiable individual is reasonably foreseeable as a result of an official's breach of duty." *Jungerman*, 925 S.W.2d at 205 (*citing Green v. Denison*, 738 S.W.2d 861 (Mo. banc 1987)); *Geiger v. Bowersox*, 974 S.W.2d 513, 517 (Mo. Ct. App. 1998). In this instance, Plaintiffs have introduced sufficient evidence on which a reasonable jury may find that the risk that Dobbs would commit suicide was "reasonably foreseeable" as a result of Defendants' failure to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

follow General Order 9-28.  The public duty doctrine does not protect Defendants Ross and Turner from liability.

## Sovereign Immunity

The City of Pagedale is protected by sovereign immunity.  Sovereign immunity from tort liability exists in Missouri except when such immunity is specifically waived, and this lawsuit does not fall within any such waivers.  First, this suit does not fit under Mo. Rev. Stat. § 537.600, which waives immunity for the operation of motor vehicles and property defects.[6]  Additionally, while the City of Pagedale has purchased an insurance policy, it has not waived its sovereign immunity.  Mo. Rev. Stat. § 537.610.[7]  Defendants have submitted the Memorandum of Coverage for this policy, and it provides sufficient evidence to establish that the City of Pagedale did not purchase liability insurance that covers any tortious acts by its employees.  The policy does not cover claims such as these, and the City of Pagedale's immunity remains intact.  *See, e.g., State ex rel. Cass Medical Center v. Mason*, 796 S.W.2d 621, 623 (Mo. 1990) (county hospital did not waive sovereign immunity because liability insurance did not cover the plaintiff's claim).  Finally,

---

[6] This statute creates an exception for the operation of motor vehicles or property defects.  Regarding property defects, the exception is for "[i]njuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition."  Mo. Rev. Stat. § 537.600.  This requires that a defect in the condition property pose the hazard, rather than one's use of the property.  *See, e.g., Dale By and Through Dale v. Edmonds*, 819 S.W.2d 388, 390 (Mo. Ct. App. 1991).  In this instance, the cell itself was not "in dangerous condition."  Mo. Rev. Stat. § 537.600.

[7] Mo. Rev. Stat. § 537.610.1 provides: "the governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insurance for tort claims, made against the state or the political subdivision, . . . Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes in any self-insurance plan duly adopted by the governing body of any political subdivision of the state."

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the operation of the jail was not a proprietary function[8] for the City of Pagedale, so this exception to sovereign immunity does not apply. *See Topps v. City of Country Club Hills*, 236 S.W.3d 660, 663 (Mo. Ct. App. 2007). The Court therefore concludes that the City of Pagedale has not waived its sovereign immunity from tort liability.

## V. CONCLUSION

The Court will dismiss all claims under 42 U.S.C. § 1983 that have been brought against the City of Pagedale as Plaintiffs have not presented sufficient evidence that the alleged constitutional violation resulted from a policy or custom. Additionally, all claims against the City of Pagedale that are brought under Missouri state law will be dismissed as sovereign immunity has not been waived. Plaintiffs' claim for deliberate indifference to a serious medical need against Defendant Ross and Defendant Turner will be dismissed as no evidence has been introduced which establishes that the delay had a detrimental effect. However, Plaintiffs' claim against Defendant Ross and Defendant Turner under 42 U.S.C. § 1983 for deliberate indifference to a known risk of suicide remains, along with Plaintiffs' claims against Defendant Ross and Defendant Turner for wrongful death and lost chance of recovery.

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' Motion for Summary Judgment [doc. #44] is **GRANTED in part** and **DENIED in part.** It is **GRANTED** as to all claims against the

---

[8] Municipalities are not immune from liability for negligence while performing proprietary functions. *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo. Ct. App. 2007). Proprietary functions are those that are "performed for the special benefit or profit of the municipal corporation, in that it provides local necessities and conveniences only to its own citizens." *Id.* However, municipalities are completely immune from liability arising from acts that are classified as governmental functions. *Id.* "Generally, an act of a municipality performed for the common good of all is classified as a governmental function . . . including the establishment and operation of schools and hospitals, the creation of municipal fire departments, and the exercise of legislative or judicial powers." *Id.*

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

City of Pagedale. It is **GRANTED** as to Plaintiffs' claim against Defendant Ross and Defendant Turner for deliberate indifference to a serious medical need. Defendants' Motion is **DENIED** as to Plaintiffs' claims against Defendant Ross and Defendant Turner under 42 U.S.C. § 1983 for deliberate indifference to a known risk of suicide, and it is also **DENIED** as to Plaintiffs' claims against Defendant Ross and Defendant Turner for wrongful death and lost chance of recovery.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiffs' Sur-Replies [doc. #60] is **DENIED.**

Dated this 15th Day of January, 2008.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com